552 S.E.2d 54

**The STATE, Respondent,**

v.

**Otis WILLIAMS, Appellant.**

**No. 3375.**

Court of Appeals of South Carolina.

Heard May 7, 2001.
Decided July 30, 2001.
Rehearing Denied Sept. 19, 2001.

426

Assistant Appellate Defender Katherine Carruth Link, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for respondent.

HUFF, J.:

Appellant, Otis Williams, was convicted of possession of marijuana and possession of contraband by a prisoner of the State. The trial judge sentenced him to one year on the simple possession charge, concurrent with ten years on the

possession of contraband charge, both sentences to run consecutive to the sentence he was currently serving. Williams appeals. We affirm in part, and remand for a subject matter jurisdiction hearing.

## ISSUES

1. Whether the trial court erred in denying appellant's motion for directed verdict on both charges, where the State failed to produce evidence of appellant's possession of the marijuana.

2. Whether the trial court had subject matter jurisdiction to convict and sentence appellant for possession of contraband by a prisoner of the State.

## FACTUAL/PROCEDURAL BACKGROUND

Williams, an inmate at Ridgeland Correctional Institution, shared a cell with inmate Foster. The cells house a maximum of two people, and each inmate has an assigned wall locker. The lockers are assigned according to the assigned bunk of the inmate. The only time the assigned bunks, and consequently the assigned lockers, are changed is in situations such as where an inmate has a medical problem preventing him from using the upper bunk. The inmates are the only ones that have a key to their locker.

On September 14, 1998, following a tip from a confidential informant, officers entered Williams' and Foster's cell and announced they were going to conduct a search. The officers asked Williams to step outside the cell while they strip searched inmate Foster. After completing the strip search, one of the officers motioned for Williams to come back into the cell to be strip searched. At that time, Williams ran into a bathroom. By the time the officers caught up with him, they found Williams kneeling in front of the toilet with one hand inside the toilet and another hand flushing the toilet. He spit up something, apparently trying to get rid of something he had in his mouth. He never indicated to the officers that he was sick.

The officers handcuffed Williams, placed him in a holding cell, and then continued the search of his cell. Williams' key to his locker was on top of his wall locker. The officers unlocked the locker and found a bag containing a green leafy substance. Test results indicated the substance was marijuana, weighing 90.2 grams, or approximately three ounces.

Although no one identified any other items in the locker containing the marijuana as belonging to Williams, the officers consistently testified the marijuana was found in Williams' wall locker. The officers conceded it was possible the locker was not Williams'; however, they testified they were sure it was his wall locker at the time of the search, the locker in question was assigned to Williams, and Foster had identified the other locker as his. Additionally, one of the officers testified, to his knowledge, there had been no change in the assigned beds and lockers in Williams' cell.

## LAW/ANALYSIS

### I. Directed Verdict

Williams asserts the trial judge erred in denying his motion for directed verdict on both charges. He contends the State failed to meet its burden of proving his possession of the marijuana found in the locker. Williams argues the officers merely assumed the locker was his, but conceded it may not have been. He contends the evidence shows the key was not on his person and there was no evidence he exercised dominion and control over the locker. He asserts, at most, the State's evidence raised only a suspicion that the marijuana found in the locker was in his possession. We disagree.

In considering a motion for a directed verdict, the trial court is concerned with the existence or non-existence of evidence, not with its weight, and the case should be submitted to the jury if there is any direct evidence or substantial circumstantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly or logically deduced. *State v. Fennell,* 340 S.C. 266, 531 S.E.2d 512 (2000). The lower court should not, however, refuse to grant the motion where the evidence merely raises a suspicion

that the accused is guilty. *State v. Mitchell,* 341 S.C. 406, 535 S.E.2d 126 (2000). "In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State. If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the appellate court must find that the case was properly submitted to the jury." *Fennell,* 340 S.C. at 270, 531 S.E.2d at 514.

Conviction of possession requires proof of possession, either actual or constructive, coupled with knowledge of the drug's presence. Actual possession occurs when the drugs are found to be in the actual physical custody of the person charged with possession. *State v. Hudson,* 277 S.C. 200, 284 S.E.2d 773 (1981). In order to prove constructive possession, the State must show the defendant had dominion and control, or the right to exercise dominion and control, over the drug. *State v. Brown,* 267 S.C. 311, 227 S.E.2d 674 (1976). Such possession can be established by circumstantial or direct evidence or a combination of the two. *Id.* "Possession requires more than mere presence. The State must show the defendant had dominion or control over the thing allegedly possessed or had the right to exercise dominion or control over it." *State v. Muhammed,* 338 S.C. 22, 27, 524 S.E.2d 637, 639 (Ct.App.1999). "Where contraband materials are found on premises under the control of the accused, this fact in and of itself gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury." *Hudson,* 277 S.C. at 203, 284 S.E.2d at 775.

The trial court properly denied Williams' motion for directed verdict on the possession charges. There was testimony from the officers that the locker in question was assigned to Williams, that inmate Foster had identified the other locker in the cell as his, that there had been no change in the assigned beds and lockers in Williams' cell to their knowledge, and that they were sure it was his wall locker at the time of the search. Additionally, Williams exhibited suspicious behavior in running to the bathroom and spitting something out of his mouth before he could be searched. The record estab-

lishes sufficient evidence Williams exercised dominion and control over the marijuana and, thus, there was sufficient evidence from which Williams' guilt could be fairly and logically deduced.

## II.   Subject matter jurisdiction

A.   Failure to Include Certain Language in Indictment

Williams also contends his conviction and sentence for possession of contraband by a prisoner of the State is void for lack of subject matter jurisdiction.   He argues the indictment for this offense is defective as it failed to allege an essential element of the offense.   Specifically, he asserts the indictment failed to allege the essential element that the item in the possession of the accused has been declared by the director of the Department of Corrections to be contraband.   We disagree.

As a preliminary matter, it must be noted that issues related to subject matter jurisdiction may be raised at any time.   *Carter v. State*, 329 S.C. 355, 495 S.E.2d 773 (1998). Thus, this issue is properly before us on appeal.

Pursuant to S.C.Code Ann. § 17–19–20 (1985), an indictment is deemed sufficient where, in addition to allegations as to time and place, as required by law, it "charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided."

An indictment is sufficient if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon.   The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged

and sufficiently apprises the defendant of what he must be prepared to meet.

*Browning v. State,* 320 S.C. 366, 368, 465 S.E.2d 358, 359 (1995) (citations omitted). An indictment phrased substantially in the language of the statute which creates and defines the offense is ordinarily sufficient. *State v. Shoemaker,* 276 S.C. 86, 275 S.E.2d 878 (1981).

The indictment, as altered,[1] charged:

That Otis Williams did in Jasper County on or about September 14, 1998, while a prisoner under the Jurisdiction of the Department of Corrections, unlawfully possess a quantity· of contraband, to wit: marijuana, in violation of Sec. 24–3–950, Code of Laws of South Carolina, (1976), as amended.

South Carolina Code Ann. § 24–3–950 (Supp.2000) provides in pertinent part:

.... It shall also be unlawful for any prisoner under the jurisdiction of the Department of Corrections to possess any matter declared to be contraband. Matters considered contraband within the meaning of this section shall be those which are determined to be such by the director and published by him in a conspicuous place available to visitors and inmates at each correctional institution....

In the case of *State v. Tabory,* 262 S.C. 136, 202 S.E.2d 852 (1974), our Supreme Court addressed the sufficiency of an indictment charging the appellant under former § 55–383, the predecessor statute to § 24–3–950, which is also identical in language to § 24–3–950. There, the court noted an indictment phrased substantially in the language of the statute which creates and defines the offense is normally sufficient. However, in applying that standard, the court concluded the allegations contained in the indictment were inadequate to charge the offense under the statute where the indictment failed to state "that the items possessed by [the accused] had been 'declared by the Director (of the Department of Corrections)

---

1. The original, type written indictment was altered, with portions being struck through and hand written changes made. This alteration is also the subject of appeal and is addressed later in this opinion.

to be contraband,' which is a necessary element of that offense." *Id.* at 140, 202 S.E.2d at 854.

On the other hand, *State v. Hamilton,* 344 S.C. 344, 543 S.E.2d 586 (Ct.App.2001), is the most recent statement of this court relative to the issues surrounding this indictment. In *Hamilton,* this court held that an indictment charging an inmate with possession of contraband in violation of S.C.Code Ann. § 24-3-950 was sufficient to vest the trial court with subject matter jurisdiction, even though it did not allege the item possessed by the accused had been declared contraband by the director of the Department of Corrections. This court found the indictment was sufficient where it specifically identified the contraband involved, incorporated S.C.Code § 24-3-950 by reference, and named the offense in the title of the indictment. *Id.* at 72, 543 S.E.2d 586. In the case before us, the indictment specifically identifies the contraband as marijuana, cites § 24-3-950 of the South Carolina Code, and includes the name of the offense in the title of the indictment. Accordingly, we find that the language of the indictment is sufficient to confer on the trial court subject matter jurisdiction in this case.

B. Alteration of Indictment

Next, Williams asserts the indictment for possession of contraband is defective because the typed indictment has been altered with handwritten changes and it is impossible to discern whether the charge for which he was convicted was actually true billed by the grand jury. He argues the typed indictment changed the charge from a violation of S.C.Code Ann. § 24-7-155 to a violation of § 24-3-950, that the initialed changes did not appear to be that of the solicitor, grand jury foreman, or clerk of court, and that there was no way to determine if the indictment had been true billed before or after the alterations were made.[2] We agree.

---

**2.** The type written indictment was entitled "POSSESSION OF CON-TRABAND BY COUNTY OR MUNICIPAL PRISONER 24-7-155" and charged, "That Otis Williams did in Jasper County on or about September 14, 1998, while a county or municipal prisoner in said county, unlawfully possess a quantity of contraband, to wit: marijuana, in violation of Sec. 24-7-155, Code of Laws of South Carolina, (1976), as amended."

■ Except for certain minor offenses, the circuit court does not have subject matter jurisdiction to convict a defendant unless there has been an indictment of the offense, a waiver of indictment, or unless the charge is a lesser included offense of the crime charged. *State v. Elliott,* 335 S.C. 512, 517 S.E.2d 713 (Ct.App.1999); *Murdock v. State,* 308 S.C. 143, 417 S.E.2d 543 (1992). Absent evidence to the contrary, proceedings in a court of general jurisdiction will be presumed regular. *Pringle v. State,* 287 S.C. 409, 339 S.E.2d 127 (1986). However, when faced with an irregularity in an indictment and the evidence of record is insufficient to show the action taken by the grand jury, it is proper for the appellate court to remand for an evidentiary hearing to determine whether the trial court had subject matter jurisdiction. *State v. Grim,* 341 S.C. 63, 533 S.E.2d 329 (2000); *Anderson v. State,* 338 S.C. 629, 527 S.E.2d 398 (Ct.App.2000).

■ The record here is insufficient to determine when and under what circumstances the alterations were made to the type written indictment. If the alterations were made prior to the action of the grand jury, the circuit court clearly had jurisdiction to convict and sentence appellant under § 24–3–950. Because we are unable to discern the circumstances under which the alterations were made, we remand this issue to the circuit court for an evidentiary hearing on the matter.[3]

**AFFIRMED IN PART AND REMANDED.**

HEARN, C.J., and GOOLSBY, J., concur.

---

**3.** Appellant does not argue, and neither of the parties has addressed the issue of whether the indictment would have been properly amended, allowing the court to retain jurisdiction, if the amendments were made subsequent to the action of the grand jury. *See* S.C.Code Ann. § 17–19–100 (1985); *Weinhauer v. State,* 334 S.C. 327, 513 S.E.2d 840 (1999); *Hope v. State,* 328 S.C. 78, 492 S.E.2d 76 (1997) (an indictment may be amended only if such amendment does not change the nature of the offense charged). In the event the circuit court determines the altered indictment was not true billed by the grand jury, the court is directed to entertain argument on the issue of whether the indictment was properly amended.